991 So.2d 1150 (2008)
Freda LINER, Wife of/and Miguel Liner
v.
Frank D. IPPOLITO.
No. 2008-CA-0208.
Court of Appeal of Louisiana, Fourth Circuit.
August 20, 2008.
*1151 Mary Grace Knapp, Law Offices of Mary Grace Knapp, Mandeville, LA, for Plaintiffs/Appellants.
Allen C. Miller, Harry Rosenberg, Phelps Dunbar L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
The plaintiffs/appellants, Freda Liner, wife of/and Miguel Liner (the "Liners"), appeal from the trial court's denial of their motion to vacate the grant of the defendant/appellee's, Frank D. Ippolito's, ex parte motion to dismiss for abandonment. The trial court determined that Hurricane Katrina was not a direct cause of the Liners' failure to take a step in the prosecution of their case. Having considered the record, memoranda, and applicable law, for the following reasons, we find that the trial court did not err in holding the action was abandoned and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The Liners retained the legal services of Frank D. Ippolito ("Mr. Ippolito"), a Louisiana licensed attorney, to provide legal representation in the case entitled Freda Liner, wife of/and Miguel Liner v. Pendleton Medical Methodist Hospital, Sunrise Medical, Inc. PCP Division, and ABC Insurance Company, Civil District Court for the Parish of Orleans, Case No. 99-1400, Division G-11. The suit was dismissed on an exception of prescription on 16 June *1152 2000. The Liners filed the instant legal malpractice action against Mr. Ippolito on 13 November 2000. Mr. Ippolito timely filed an answer denying liability on 29 January 2001. Thereafter, a number of steps were taken by both parties intermittently. It is undisputed that the last formal step in the prosecution of the case prior to Hurricane Katrina was taken on 23 January 2004, when Mr. Ippolito served several subpoenas duces tecum on the Liners' medical providers. Over three years later, on 30 April 2007, the Liners filed a motion for partial summary judgment.
Mr. Ippolito filed an ex parte motion to dismiss the Liners' suit on the ground of abandonment on 1 June 2007, which was granted by the trial court that day and, accordingly, the suit was dismissed with prejudice.[1] On 25 June 2007, the Liners filed a motion to vacate the order dismissing the suit. The matter came for hearing on 7 September 2007. After consideration of the memoranda, oral argument, as well as the facts and authorities submitted for review, the trial court denied the Liners' motion to vacate the court's dismissal of their claims for abandonment without assigning written reasons. The Liners timely filed the instant appeal.

ABANDONMENT
The issue of abandonment is generally a question of law subject to de novo review on appeal. Escoffier v. City of New Orleans, 06-1005, p. 2 (La.App. 4 Cir. 4/11/07), 957 So.2d 216, 218. This court has held that with regard to abandonment actions pursuant to La. C.C.P. art. 561, the standard of review of the appellate court is simply to establish if the trial court's interpretive decision is legally correct. Fontenot v. Tidewater, Inc., 08-0180 (La.App. 4 Cir. 7/30/08), 990 So.2d 1280. In the instant case, we find that the issue of whether the Liners proved that the failure to take formal steps in the prosecution of their case was a direct result of Hurricane Katrina is a mixed question of law and fact, which is subject to the manifest error standard of review. Armenia Coffee Corp. v. American National Fire Ins. Co., 06-0409, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 253.
A court of appeal may set aside a trial court's finding of fact where there is a manifest error or the finding is clearly wrong. Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). The test dictates that a reviewing court must do more than simply review the record for some evidence that supports or controverts the trial court's finding; the court must review the record in its entirety to determine whether the finding is clearly wrong. Id.
The Liners aver that the results of Hurricane Katrina and defendant's own actions prevented them from taking a formal step in the prosecution of their claim against *1153 Mr. Ippolito. La. C.C.P. art. 561 provides, in pertinent part:
A. (1) An action, except as provided in Subparagraph (2) of this Paragraph, is abandoned when the parties fail to take any step in the prosecution or defense in the trial court for a period of three years, unless it is a succession proceeding:
(a) Which has been opened;
(b) In which an administrator or executor has been appointed; or
(c) In which a testament has been probated.
(2) If a party whose action is declared or claimed to be abandoned proves that the failure to take a step in the prosecution or defense in the trial court or the failure to take any step in the prosecution or disposition of an appeal was caused by or was a direct result of Hurricane Katrina or Rita, an action originally initiated by the filing of a pleading prior to August 26, 2005, which has not previously been abandoned in accordance with the provisions of Subparagraph (1) of this Paragraph, is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of five years, unless it is a succession proceeding:
(a) Which has been opened;
(b) In which an administrator or executor has been appointed; or
(c) In which a testament has been probated.[2]
According to La. C.C.P. art. 561 A(2), the right to the five-year abandonment period requires proof that either Hurricanes Katrina or Rita directly caused the delay. Apparently, the trial court determined that the Liners failed to carry their burden of proof. We agree.
The Liners aver that they were forced to evacuate to Mississippi during and immediately after the storm, and when they were permitted to return to Louisiana, they discovered that all of their personal possessions had been destroyed and seven feet of water had inundated their home leaving them homeless. Eventually, the Liners received a FEMA trailer for a period of approximately nine months while they procured alternate housing. Additionally, the Liners assert that their attorney, a solo practitioner whose law practice is located in Mandeville, Louisiana, was displaced to Texas for several months following the storm, and had a difficult time re-opening her law office as a result of losing all of her employees. For these hurricane-related reasons, the Liners contend they were prevented from taking formal steps in the prosecution of their case.
A review of the record, however, belies the Liners' contentions. As early as February 2006, well before the expiration of the three-year abandonment period (which, given the emergency orders in place, would have expired on 23 March 2007), the Liners' attorney was advancing correspondence to Mr. Ippolito's counsel regarding *1154 her intentions to file a motion for summary judgment on the issue of liability, stating specifically that "all discovery has been accomplished." The Liners' counsel further stated her intention to set the matter for trial. This correspondence was faxed from the Mandeville office of Liners' counsel, indicating her office was back in operation to some degree within six months after the storm. Additional correspondence was faxed from the Liners' counsel to defense counsel in April 2006.[3] Moreover, according to the affidavit of Brandy L. Gonzales, Esquire, found in the record attached to the Liners' memorandum in support of their motion to vacate, Ms. Gonzales was retained by the Liners' counsel in or about November 2006 for the express purpose of preparing the motion for summary judgment. The Liners' motion for partial summary judgment, however, was not filed until 30 April 2007, five weeks after the three-year abandonment period had lapsed.
The Liners argue that the Supreme Court's pronouncement in Clark v. State Farm Mutual Automobile Ins. Co., 00-3010, p. 10 (La.5/15/07), 785 So.2d 779, 787 "that any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment," mandates a reversal of the trial court's dismissal of their action, especially where a plaintiff has clearly demonstrated that he does not intend to abandon the action. Id., citing Young v. Laborde, 576 So.2d 551, 552 (La.App. 4 Cir.1991). Specifically, the Liners contend that their counsel repeatedly attempted by correspondence and telephone to contact defense counsel to no avail to discuss a possible stipulation to liability thereby obviating the need to proceed with a motion for summary judgment. Moreover, after several months of hearing nothing from defense counsel, the Liners' counsel was finally advised that Mr. Ippolito was obtaining new counsel and that his file was being transferred to another law firm. The Liners argue that their counsel was merely extending professional courtesies in refraining from taking formal steps in the prosecution of their case until Mr. Ippolito could get situated with new counsel, and that at no time did they ever indicate an intention of abandoning their suit against him. The Liners suggest that "it was [Mr. Ippolito's] counsel's own failure to cooperate with [the Liners] that added to the delay in filing a Motion for Partial Summary Judgment." Thus, under the circumstances of this case, given defense's "lack of communication and professionalism [luring] appellants into waiting for Appellee's enrollment of new counsel before proceeding," the Liners argue dismissal of their action is inequitable and unwarranted. We disagree.
In Clark, at issue was whether the defendant's unconditional tender, albeit outside the record, constituted a formal "step" in the defense of the action or a waiver of the right to have the suit declared abandoned and therefore dismissed. While the Court provided an extensive analysis of the history and policy considerations underlying abandonment of actions, and did note that dismissal was the "harshest of remedies," the Court specifically noted that a plaintiff had to clearly demonstrate "before the court during the prescribed period that he does not intend to abandon the action." Id. at p. 9, 785 So.2d at 786 [emphasis added]. In the *1155 case at bar, the Liners made no demonstration before the court that they intended to proceed with their case. Additionally, the Liners' counsel could have taken any step in this litigation, filed any pleading,[4] in order to preserve their claim and chose not do so. The consequence of her inaction, though harsh, is dismissal.
In conclusion, we find that the trial record lacks evidence to prove that the Liners could not take a formal "step" in the prosecution of Mr. Ippolito due to Hurricane Katrina. It is undisputed that no discovery occurred between January 2004 (the date Mr. Ippolito issued subpoenas duces tecum to the Liners' medical providers) and April 2007 (when the Liners' motion for partial summary judgment was filed). Accordingly, for the foregoing reasons, we find the three-year abandonment period applies. See Fontenot v. Tidewater, Inc., supra. The trial court did not err in determining that the Liners' action against Mr. Ippolito was abandoned.

DECREE
For the above and foregoing reasons, we find that the trial court was correct in finding that the Liners' suit was abandoned and affirm.
AFFIRMED.
NOTES
[1] Although the trial court dismissed the Liners' suit with prejudice, we note that a proceeding may only be dismissed for article 561 abandonment without prejudice. Morgan v. Hopkins, 36,506 (La.App. 2 Cir. 10/23/02), 830 So.2d 459; Reed v. Peoples State Bank of Many, 36,531 (La.App. 2 Cir. 3/5/03), 839 So.2d 955; Total Sulfide Services, Inc. v. Secorp Industries, Inc., 96-589 (La.App. 3 Cir. 12/11/96), 685 So.2d 514; St. Tammany Parish Sewerage Dist. No. 7 v. Monjure, 95-0937 (La.App. 1 Cir. 12/15/95), 665 So.2d 801; Richey v. Fetty, 96-2762 (La.App. 1 Cir. 4/8/98), 715 So.2d 1. Thus the trial court's judgment is partially in error. However, because the plaintiffs' suit sounds in tort, the dismissal in this case whether with or without prejudice results in no different result. That is, a dismissal without prejudice is considered as if suit has never been filed; any new suit that the Liners might file would be prescribed. Accordingly, we do not exercise our authority under La. C.C.P. arts. 2164 and 2129 to amend the trial court's judgment.
[2] Article 561 has been construed as imposing three requirements on a plaintiff. First, a plaintiff must take some "step" towards prosecution of his lawsuit. In this context, a "step" is defined as taking formal action before the court which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice. Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of suit. Third, the step must be taken within the legislatively prescribed time period of the last step taken by either party; sufficient action by either plaintiff or defendant will be deemed a step. See Clark v. State Farm Mutual Automobile Ins. Co., 00-3010, pp. 5-6 (La.5/15/07), 785 So.2d 779, 784.
[3] See Madison v. Touro Infirmary, 02-0799, p. 4 (La.App. 4 Cir. 8/14/02), 826 So.2d 568, 571, where this court determined that correspondence between the parties and a defendant's refusal to set the matter for trial was insufficient to constitute steps in the prosecution of the case for purposes of abandonment.
[4] The Liners contend that had they filed their motion for summary judgment or other pleading prior to the enrollment of new counsel, "service of any pleading on any counsel would have been ineffective as Appellants were not provided with information as to whom to serve." Whether service of a pleading could have been perfected is irrelevant to the Liners' obligation to take a formal step in the prosecution of their case, especially since courts have declined to allow suits to be dismissed as abandoned based on technical formalities such as service of a pleading. See Clark, 00-3010, p. 9, 785 So.2d at 786.